**Opinion issued December 17, 2024**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-23-00478-CV

_____

**VICTOR ANTHONY CHARLES, Appellant**

**V.**

**GARRY C. WALKER, Appellee**

---

**On Appeal from the 234th District Court**
**Harris County, Texas**
**Trial Court Case No. 2019-39980**

---

## MEMORANDUM OPINION

This appeal concerns a real property dispute between pro se appellant Victor Anthony Charles and appellee Garry C. Walker. Charles sued Walker for trespass to try title by adverse possession and asserted a nuisance claim. Following a bench trial, the trial court ruled in Walker's favor and signed a judgment dismissing his claims

against Walker with prejudice. On appeal, Charles contends that the trial court erred in dismissing his adverse possession and nuisance claims because he offered evidence to support them. He also asserts that he was entitled to judgment against Charles based on the unpleaded claim of unjust enrichment. Finding no error in the trial court's judgment, we affirm.

## Background

Walker owned a residential property (the Property) on Sherwood Drive in the City of Houston. Walker resided in the home on the Property. Hurricane Harvey struck Houston in August 2017. At trial, Walker testified that the hurricane damaged his home, rendering it uninhabitable, and he was forced to move out.

In July 2019, Charles filed suit against Walker. He asserted a claim for trespass to try title under the three-year limitations period for adverse possession prescribed in section 16.024 of the Texas Civil Practice and Remedies Code. Charles also asserted a nuisance claim. He asked that he be awarded "title and deed" to the Property. Alternatively, he sought damages.

In his petition, Charles alleged that, in August 2016, he noticed that the Property "was abandoned, the grass was very tall, and the City of Houston [had] placed a violation notice on the [P]roperty." He asserted that Walker had "neglected the [P]roperty" and that it "was a nuisance."

Charles claimed that he had "placed No Trespassing signs on the property with his phone number hoping that the property owner or person responsible for the property would contact [him]," but "no one ha[d] contacted [him] regarding the [P]roperty." He claimed that, since August 2016, he "ha[d] constantly exercised custody, care, and control of the [P]roperty exclusively, peaceabl[y], and adversely with no interruption by any party legally entitled to the property." He alleged that he had "incurred . . . expenses in the maintenance of the [P]roperty and to avoid the City of Houston from abating the title and boarding up and/or demolishing the property." He claimed that, "absent [his] maintenance of the [P]roperty[,] the City of Houston would have indeed abated [Walker's] title to the property and boarded up or demolished the property." He asked that he "be awarded all the fees [he] incurred for the maintenance to the [P]roperty" if he was not awarded title.

Charles also stated that, in January 2019, he had filed an affidavit—entitled "Notice of Adverse Possession and Lien Against Title/Deed"—with the Harris County Appraisal District. He attached the affidavit to his petition. In the affidavit, Charles stated that he was notifying "any interested party or parties that [he had] taken adverse possession and [was] claiming ownership of the . . . [P]roperty peaceably and [had] move[d] to be awarded a Deed of Ownership and Title."

The trial court authorized Charles to serve Walker with citation by publication. Walker did not answer the suit, and Charles filed a motion for default

3

judgment. In September 2019, the trial court granted the motion and signed a default judgment awarding Charles title to the Property.

Walker filed a petition for bill of review, asserting that Charles had not properly served him with the instant suit. The trial court granted the bill-of-review petition, set aside the default judgment, and reinstated the instant suit, thereby returning the parties to their original status.

The case went to trial in May 2023. At the bench trial, Charles, acting pro se, called Walker to testify. Walker stated that he moved from the Property after it was damaged by Hurricane Harvey, which occurred in August 2017. He denied that he had abandoned the Property or that he moved out before the hurricane. He testified that the move was temporary and that he intended to move back into the home after it was repaired. He said that he was still making mortgage payments on the home.

Walker acknowledged that he had a received a ticket from the City's municipal court regarding the Property's condition. Charles offered a copy of the ticket into evidence. The ticket, dated April 2016, indicated that the Property violated a City ordinance because the Property had "an accumulation of weeds" and "inoperable vehicles," including a boat and two motor vehicles, which "create[d] a public nuisance." When questioned by Charles, Walker testified that he had addressed the violations by cutting the yard and removing the inoperable vehicles. Charles then offered into evidence photographs of the Property date-stamped May

15, 2017. The photos show a motor vehicle with an expired inspection sticker and a boat on the Property. Charles asked Walker if he had been truthful when he testified that he removed the vehicles. Walker responded that he had removed them.

Charles's evidence also included a violation notice from the City dated November 2018. The notice stated, "The vacant property is still open and unsecured from front window. There are junkwaste car parts, and tree waste in front yard[.]" The notice was marked undeliverable, and Walker said that he never received it.

In addition, Charles's evidence included photographs of the Property. The photographs showed trash and debris inside and outside the home. Walker testified that he planned to remove car parts strewn in the yard but someone else had removed them before he could. Walker testified that he never received notice from the City that the home would be torn down because it was a nuisance. He acknowledged that he saw signs posted on the Property stating "no trespassing," but he did not recall seeing a phone number on the signs.

Walker also testified that, about two and a half or three years before trial, his sister and mother had visited the Property. Charles called the police, but, when the police arrived, they told Charles to leave. After that incident, Walker went to the Property and found someone working there. Walker called the police. Charles arrived at the Property and showed the police paperwork. The police then told Walker to leave. Walker testified that he had not been to the Property since then.

5

Charles also called Lester Hatchet to testify. Hatchet testified that in July 2018, he had helped Charles cleanup the Property, including hauling away trash and cutting the grass. Charles's evidence included photographs of Hatchet assisting in the cleanup and before and after photographs of the Property. Evidence referenced during Hatchet's testimony also included a printout from the appraisal district's website purporting to show that the Property had increased in value from $59,759 in 2019 to $151,395 in 2023.

After Charles rested, Walker made an oral motion for judgment. Walker argued that Charles had failed to meet the statutory requirements of Civil Practice and Remedies Code section 16.024 to prove adverse possession under the three-year limitations period. Charles responded that he had proven adverse possession. He asserted that the Property had been vacant since August 2016. Charles argued that the City had cited the Property for violations and that he had remedied those issues. He claimed that he had prevented the City from "demolish[ing] th[e] house." Charles informed the trial court that his aunt lived nearby and that he had become involved in cleaning up the Property because she complained that illegal activities occurred on the Property. He argued that, since October 2019, the Property "ha[d] not been in a nuisance condition due to [his] adverse possession." Charles stated that Walker had "created a per say nuisance condition in the community."

Charles further asserted that he had established a claim of unjust enrichment. He argued that he should be awarded $90,000 in damages, representing the amount that the Property increased in value from 2019 to 2023. Walker objected, pointing out that Charles never pleaded a claim for unjust enrichment.

After the trial court denied Walker's motion for judgment, Walker called Charles to testify, and Charles was sworn in as a witness. Charles testified that he had sold the Property to Kevin Wright under contract for deed in August 2020. Charles testified that Wright had been making installment payments to him. Charles stated that he still owned the Property and would continue to own it until Wright made all the payments. Charles said that Wright needed to make one more payment and then the Property would be his.

Following trial, the trial court rendered judgment in Walker's favor, ruling that Charles "should not prevail in any of his claims against [Walker]." The trial court ordered that "[a]ll of [Charles's] claims against [Walker were] dismissed with prejudice." The trial court signed findings of fact and conclusions of law in support of its judgment. This appeal followed.

**Trespass to Try Title by Adverse Possession**

On appeal, Charles argues that the trial court erred in dismissing his claim for trespass to try title by adverse possession under the three-year limitations statute because the evidence supported his claim. We read Charles's argument to challenge

the legal and factual sufficiency of the evidence to support the trial court's rejection of that claim.

## A. Standard of Review

When a party challenges the legal sufficiency of an adverse finding on an issue on which that party had the burden of proof, the party must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001); *Aspenwood Apts. Partners, LP v. Harris Cnty. Appraisal Dist.*, No. 01-20-00335-CV, 2022 WL 1249956, at *8 (Tex. App.—Houston [1st Dist.] Apr. 28, 2022, no pet.) (mem. op.). A matter is conclusively established if reasonable people could not differ as to the conclusions to be drawn from the evidence. *See City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005).

When a party challenges the factual sufficiency of an adverse finding on an issue on which that party had the burden of proof, the party "must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence." *Aspenwood Apts. Partners, LP*, 2022 WL 1249956, at *9 (citing *Nguyen v. Yovan*, 317 S.W.3d 261, 270 (Tex. App.—Houston [1st Dist.] 2009, pet. denied), and *Francis*, 46 S.W.3d at 242). In reviewing a factual sufficiency challenge, we must "consider and weigh all of the evidence," and we may "set aside a verdict only if the evidence is so weak or if the finding is so against the great weight and

preponderance of the evidence that it is clearly wrong and unjust." *Id.*; *see Crosstex N. Tex. Pipeline, L.P. v. Gardiner*, 505 S.W.3d 580, 615 (Tex. 2016).

In a bench trial, the trial court is the sole judge of the witnesses' credibility and the weight to be given their testimony. *See Zenner v. Lone Star Striping & Paving L.L.C.*, 371 S.W.3d 311, 314 (Tex. App.—Houston [1st Dist.] 2012, pet. denied). In resolving factual disputes, the trial court may choose to believe one witness and disbelieve others, and it may resolve any inconsistencies in a witness's testimony. *Id.*

An appellant may not challenge a trial court's conclusions of law for factual sufficiency, but we may review the legal conclusions drawn from the facts to determine their correctness. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). We review the trial court's conclusions of law de novo and uphold them if they can be sustained on any legal theory supported by the evidence. *See Zenner*, 371 S.W.3d at 314–15.

**B.    Analysis**

"[A] trespass-to-try-title action 'is the method of determining title to lands.'" *Brumley v. McDuff*, 616 S.W.3d 826, 831–32 (Tex. 2021) (quoting TEX. PROP. CODE § 22.001(a)). In a trespass-to-try-title action, a plaintiff may prove legal title by establishing title by limitations, that is, by adverse possession. *Id*. Adverse possession requires "an actual and visible appropriation of real property,

commenced and continued under a claim of right that is inconsistent with and is hostile to the claim of another person." TEX. CIV. PRAC. & REM. CODE § 16.021(1). "The concept of adverse possession allows a person to claim title to real property presently titled in another." *Bynum v. Lewis*, 393 S.W.3d 916, 918 (Tex. App.—Tyler 2013, no pet.). The adverse possession statutes are statutes of limitations intended to settle land titles. *See Nat. Gas Pipeline Co. of Am. v. Pool*, 124 S.W.3d 188, 198–99 (Tex. 2003).

To prove adverse possession, a claimant must establish six elements: (1) actual possession of the disputed property, (2) that is open and notorious, (3) that is peaceable, (4) under a claim of right, (5) that is adverse or hostile to the claim of the owner, and (6) consistent and continuous for the duration of the statutory period. *Dyer v. Cotton*, 333 S.W.3d 703, 710 (Tex. App.—Houston [1st Dist.] 2010, no pet.). A party seeking to establish title to land by virtue of the statute of limitations has the burden of proving every fact essential to that claim by a preponderance of the evidence. *Rhodes v. Cahill*, 802 S.W.2d 643, 645 (Tex. 1990) (op. on reh'g).

On appeal, Charles asserts that he proved the requirements of adverse possession under the three-year limitations period found in Civil Practice and Remedies Code section 16.024. Under that provision, "[a] person must bring suit to recover real property held by another in peaceable and adverse possession under title

10

or color of title not later than three years after the day the cause of action accrues." TEX. CIV. PRAC. & REM. CODE § 16.024.

As referenced in section 16.024, "title" means "a regular chain of transfers of real property from or under the sovereignty of the soil." TEX. CIV. PRAC. & REM. CODE § 16.021(4). And "color of title" has the following definition:

a consecutive chain of transfers to the person in possession that:

(A) is not regular because of a muniment that is not properly recorded or is only in writing or because of a similar defect that does not want of intrinsic fairness or honesty; or

(B) is based on a certificate of headright, land warrant, or land scrip.

*Id.* § 16.021(2); *see, e.g.*, *Oncale v. Veyna*, 798 S.W.2d 802, 805 (Tex. App.—Houston [14th Dist.] 1990, no writ) (holding that performance of earnest money contract without transfer of deed was muniment sufficient to show color of title).

In its findings of fact and conclusions of law, the trial court noted that, "to prove adverse possession under the three-year statute, [Charles] was required to prove that possession was under title or color of title." The trial court found that Charles had not proven possession under title or color of title because he failed "to show a series of transfers to demonstrate that he ha[d] title."

Charles asserts that he proved adverse possession under color of title. To support his assertion, Charles cites his "Notice of Affidavit and Adverse Possession," found in the clerk's record attached to his petition. Charles claims that

11

he filed the affidavit in the appraisal district's records to establish his right to title by adverse possession. A copy of the affidavit appears in the clerk's record affixed to Charles's petition, but he did not offer the affidavit into evidence at trial. Because "[d]ocuments attached to pleadings are not evidence unless they are offered and admitted as evidence by the trial court," we do not consider the affidavit in our sufficiency-of-the-evidence review. *See Guerinot v. Wetherell*, No. 01-12-00194-CV, 2013 WL 2456741, at *5 (Tex. App.—Houston [1st Dist.] June 6, 2013, no pet.) (mem. op.). And, in any event, nothing in the affidavit shows "a consecutive chain of transfers" to Charles as required to establish adverse possession under color of title. *See* TEX. PROP. CODE § 16.021(2); *id.* § 16.024.

Charles also points to statements he made in response to Walker's motion for judgment. Charles stated that, in 2018, the City of Houston had threatened to demolish the home on the Property because it was a nuisance. Charles claimed that he told the City that he would take responsibility for the Property because he was the owner. He said that he provided the City with the affidavit that he had filed in the appraisal district's records. Charles claimed that the City accepted the affidavit as proof that he owned the Property and did not demolish the home because he had cleaned up the Property.

When he made these statements, Charles had not yet been sworn as a witness. We note that, in *Lastor v. Jackson*, the appellate court treated a pro se party's

unsworn factual statements regarding matters within his personal knowledge as evidence at trial when the other party had not objected that the pro se party had not been sworn as a witness. No. 09-18-00146-CV, 2019 WL 613618, at *4 (Tex. App.—Beaumont Feb. 14, 2019, no pet.) (mem. op.). Here, we need not decide whether Charles's statements should be treated as evidence. Even if they are treated as evidence, the statements do not prove that Charles adversely possessed the Property under color of title because the statements do not show "a consecutive chain of transfers." *See* TEX. PROP. CODE § 16.021(2); *id.* § 16.024. In addition, during his testimony, Charles admitted that no one had deeded the Property to him.

Given the evidence, we conclude that Charles did not conclusively establish all vital facts to prove his claim for trespass to try title by adverse possession under the three-year statute of limitations; namely, Charles failed to conclusively show that he adversely possessed the Property under title or color of title. *See* TEX. PROP. CODE § 16.021(2); *id.* § 16.024. We also conclude that the trial court's finding that Charles had not shown that he possessed the Property under title or color of title was not so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *See Francis*, 46 S.W.3d at 242. Accordingly, we hold that the evidence was legally and factually sufficient to support the finding and reject Charles's argument assailing the trial court's dismissal of his adverse possession claim.

**Nuisance**

Charles also challenges the trial court's dismissal of his nuisance claim. He asserts that the trial court "erred by its failure to find the [P]roperty became a public nuisance."

**A.      Applicable Legal Principles**

*1.      Standing*

Standing is implicit in the concept of subject-matter jurisdiction and is essential to the authority of a court to decide a case. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993). "A court has no jurisdiction over a claim made by a plaintiff who lacks standing to assert it. Thus, if a plaintiff lacks standing to assert one of his claims, the court lacks jurisdiction over that claim and must dismiss it." *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 150 (Tex. 2012). Standing is never presumed, cannot be waived, and may be raised for the first time on appeal. *See Tex. Ass'n of Bus.*, 852 S.W.2d at 443–44. Standing may be raised sua sponte by an appellate court. *See Ritenour v. Centrecourt Homeowners Ass'n, Inc.*, No. 01-20-00310-CV, 2022 WL 963268, at *3 (Tex. App.—Houston [1st Dist.] Mar. 31, 2022, no pet.) (mem. op.) (citing *Tex. Ass'n of Bus.*, 852 S.W.2d at 444–45). "[W]hen a Texas appellate court reviews the standing of a party sua sponte, it must construe the petition in favor of the party, and if necessary, review the entire record to determine if any evidence supports standing." *Tex. Ass'n of Bus.*, 852

S.W.2d at 446. Whether a trial court has subject-matter jurisdiction is a question of law that we review de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

### 2. *Public Nuisance*

"A nuisance is a condition that substantially interferes with the use and enjoyment of land by causing unreasonable discomfort or annoyance to persons of ordinary sensibilities." *Barnes v. Mathis*, 353 S.W.3d 760, 763 (Tex. 2011). "A public nuisance is a condition that amounts to an unreasonable interference with a right common to the general public." *Tex. Auto Salvage, Inc. v. D D Ramirez, Inc.*, No. 13-19-00500-CV, 2021 WL 4780218, at *5 (Tex. App.—Corpus Christi–Edinburg Oct. 14, 2021, no pet.) (mem. op.) (quoting *Jamail v. Stoneledge Condo. Owners Ass'n*, 970 S.W.2d 673, 676 (Tex. App.—Austin 1998, no pet.) (citing RESTATEMENT (2D) OF TORTS § 821B(1) (1979)). A public nuisance "affects the public at large" by "adversely affecting either the entire community, a public gathering place, or even a considerable portion of the citizenry," *Bolton v. Fisher*, 528 S.W.3d 770, 778 (Tex. App.—Texarkana 2017, pet. denied), while "[a] private nuisance affects an individual or a small number of individuals rather than the public at large," *Mathis v. Barnes*, 377 S.W.3d 926, 930 (Tex. App.—Tyler 2012, no pet.).

15

**B.     Analysis**

To establish standing to bring a claim seeking relief from a public nuisance, a plaintiff must show that he suffered a special injury different in kind from that suffered by the public at large. *See Tex. Auto Salvage*, 2021 WL 4780218, at *7; *United Food & Commercial Workers Int'l Union v. Wal-Mart Stores, Inc.*, No. 02-15-00374-CV, 2016 WL 6277370, at *8 (Tex. App.—Fort Worth Oct. 27, 2016, pet. denied) (mem. op.); *Jamail*, 970 S.W.2d at 676. In its findings of fact and conclusions of law, the trial court determined that, because "[t]he property in question [did] not belong to [him], [Charles did] not have a cause of action for legal injury against [Walker]," but the trial court did not expressly address whether Charles had shown a special injury, nor did it otherwise address standing.

We review sua sponte the issue of whether Charles had standing to seek relief based on a claim of public nuisance. *See Tex. Ass'n of Bus.*, 852 S.W.2d at 443. Specifically, we review Charles's petition and the evidence to determine whether he established that he suffered a special injury. *See id.* at 446; *Tex. Auto Salvage, Inc.*, 2021 WL 4780218, at *7; *see also United Food & Commercial Workers Int'l*, 2016 WL 6277370, at *8 (holding that "Walmart had standing to assert a claim for redress of its public-nuisance injuries" where evidence showed that demonstrators blocked public streets adjacent to Walmart because "Walmart suffered injuries to its business interests, different in kind and degree than that of the general public"); *Boone v.*

*Clark*, 214 S.W. 607, 611 (Tex. Civ. App.—Fort Worth 1919, writ ref'd) (concluding that plaintiffs had standing to sue for public nuisance because plaintiffs' allegations that "they own[ed] the fee-simple title to lands abutting on different public roads, and that producing oil wells on the adjoining roads will drain the oil from [plaintiffs'] lands" showed that they would "sustain a special injury by reason of said wells not suffered by the public at large").

In his petition, Charles alleged that the Property "was abandoned, the grass was very tall, and the City of Houston placed a violation notice on the property." He claimed that Walker had "neglected the property and the property prior to [his] adverse possession, was a nuisance," but Charles made no allegation indicating that the alleged condition of the Property caused him to suffer a special injury different in kind from that suffered by the public at large. At trial, Charles presented evidence showing the dilapidated condition of the Property. He also offered evidence showing that the City of Houston had cited the Property because it was overgrown and had abandoned vehicles. During his response to Walker's motion for judgment, Charles stated that his aunt lived nearby and that he had become involved in cleaning up the Property because she complained that illegal activities occurred there. But the record is devoid of any evidence showing that Charles suffered any special injuries—that is, any injuries that were different in kind than that of the general public. Thus, we hold that Charles did not show that he had standing to seek redress based on public

17

nuisance, and the trial court did not err when it dismissed his nuisance claim.[1] *See*

*Tex. Auto Salvage*, 2021 WL 4780218, at \*9–10 (holding that plaintiff "lacked

standing to bring its public nuisance claim" against salvage yard operators based on

operators alleged environmental pollution because plaintiff did not show that it

"suffered a unique injury, distinct from that sustained by the public at large").

### Unjust Enrichment

Finally, Charles argues on appeal that he should be awarded damages based

on a claim of unjust enrichment. Charles asserts that he made improvements to the

Property that increased its value by $91,636.00 and that "the trial court erred by not

awarding [him] . . . the increased value of the [P]roperty." Walker responds that

Charles never pleaded a claim for unjust enrichment.

### A.      Applicable Legal Principles

Pleadings must give reasonable notice of the claims asserted. *SmithKline*

*Beecham Corp. v. Doe*, 903 S.W.2d 347, 354 (Tex. 1995). As a reviewing court, we

liberally construe the petition to include claims that reasonably may be inferred from

the specific language used in the petition. *See id.* But "a judgment must be supported

by the pleadings, and if not so supported, it is erroneous." *Cunningham v. Parkdale*

---

[1]     Charles also cites authority defining nuisance per se, but he does not argue that the trial court erred by not awarding him relief under a separate claim for nuisance per se. Although not entirely clear, Charles appears to cite the authority as additional support for his assertion that the trial court erred by concluding that he was not entitled to relief based on public nuisance. *See* TEX. R. APP. P. 38.1(i) (requiring briefs to contain clear and concise arguments).

18

*Bank*, 660 S.W.2d 810, 813 (Tex. 1983). For that reason, "a party may not be granted relief in the absence of pleadings to support that relief." *Id.*; *see* TEX. R. CIV. P. 301 (providing that court's judgment shall conform to the pleadings).

**B.     Analysis**

A review of Charles's original petition—his live pleading—shows that he did not allege that Walker was unjustly enriched because Charles's improvements to the Property had increased its value. Charles did not seek damages based on the increased value of the Property. Thus, we conclude that the claim was unpleaded.[2]

Nonetheless, we are mindful that issues not raised in the pleadings can be tried by express or implied consent of the parties. *See* TEX. R. CIV P. 67; *Adeleye v. Driscal*, 544 S.W.3d 467, 484 (Tex. App.—Houston [14th Dist.] 2018, no pet.). An unpleaded issue may be deemed tried by consent when evidence on the issue is developed without objection under circumstances indicating both parties understood the issue was being contested. *See Ingram v. Deere*, 288 S.W.3d 886, 893 (Tex. 2009); *Adeleye v*, 544 S.W.3d at 484. To determine whether an unpleaded issue was tried by consent, the trial court must examine the record not for evidence of the issue,

---

[2]     We note that Charles alleged in his petition that he incurred "expenses in the maintenance of the [P]roperty and to avoid the City of Houston from abating the title and boarding up and/or demolishing the property." In his prayer, Charles asked to be "awarded all the fees [he] incurred for the maintenance to the [P]roperty." In his affidavit affixed to his petition, Charles stated that he incurred expenses of $8,428.00 to maintain and restore the property. However, Charles did not seek reimbursement of those damages at trial, nor did he offer evidence to support them. Moreover, Charles does not seek the incurred expenses as damages on appeal.

but rather for evidence the issue was tried. *Hampden Corp. v. Remark, Inc.*, 331 S.W.3d 489, 496 (Tex. App.—Dallas 2010, pet. denied). "An issue is not tried merely because there is evidence on the issue, but can be deemed tried by consent when both parties present conflicting evidence on the subject." *Id.* (citing *Ingram*, 288 S.W.3d at 893).

At trial, Charles offered into evidence a printout from the county appraisal district's website that he claimed indicated that, between 2019 and 2023, the Property's value increased from $59,759 to $151,395. Charles argued that he was "entitled to [an] unjust enrichment claim against Mr. Walker" because the value had increased while the Property was "under [his] care, custody, and control." In response, Walker objected on the ground that the claim had not been raised in Charles's pleadings. Given Walker's objection, we conclude that Charles's unjust enrichment claim based on the increased value of the property was not tried by consent. *See UMLIC VP LLC v. T & M Sales & Env't Sys., Inc.*, 176 S.W.3d 595, 605 (Tex. App.—Corpus Christi–Edinburg 2005, pet. denied) (concluding issue was not tried by consent where evidence of issue was admitted without objection but opposing party objected to submission of jury question on issue). Because Charles's unjust enrichment claim was unpleaded and not tried by consent, we hold that the trial court did not err when it rendered judgment that did not award Charles damages based on the increased value of the Property.

## Conclusion

We affirm the judgment of the trial court.


Richard Hightower
Justice

Panel consists of Justices Kelly, Hightower, and Guerra.